**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)**

| | | |
|---|---|---|
| MEADWESTVACO CORPORATION, *et al.,* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| | ) | |
| v. | ) | 1:10-cv-511-GBL-TRJ |
| | ) | |
| | ) | |
| REXAM PLC, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF ALL DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT ON PLAINTIFFS' CLAIM FOR
PRE-ISSUANCE DAMAGES UNDER 35 U.S.C. § 154**

## **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION AND SUMMARY OF ARGUMENT ...................................................... 1

II.  STATEMENT OF UNDISPUTED MATERIAL FACTS ...................................................... 2

III. ARGUMENT.......................................................................................................................... 8

   A.   The Legal Standard For Summary Judgment ....................................................................... 8

   B.   Partial Summary Judgment Is Warranted Because The Issued Claims Of The Asserted
   Patents Are Not Substantially Identical To The Published Claims............................................ 9

      1.   Whether Claims Are "Substantially Identical" Is A Question of Law And Therefore
      Appropriate for Summary Judgment ...................................................................................... 9

      2.   The Scope of the Claims of the Asserted Patents Was Substantively Changed During
      Prosecution To Overcome Prior Art...................................................................................... 13

IV.  CONCLUSION ................................................................................................................. 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Cases</u>

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)....................................................................................................8, 9

*Bloom Engineering Co., Inc.* v. *North American Mfg. Co., Inc.*,
   129 F.3d 1247 (Fed. Cir. 1997).........................................................................................12

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
   535 U.S. 722 (2002).........................................................................................................16

*K-Tec, Inc. v. Vita-Mix Corp.*,
   No. 2:06-CV-108, 2010 WL 2079682 (D. Utah May 24, 2010) .........................................10

*Laitram Corp.* v. *NEC Corp.*,
   163 F.3d 1342 (Fed. Cir. 1998).............................................................................11, 12, 16

*Loops, LLC v. Phoenix Trading, Inc.*,
   No. C08-1064, 2010 WL 3041866 (W.D. Wash. July 30, 2010) ................................9, 10, 12

*Monsanto Company v. Syngenta Seeds, Inc.*,
   503 F.3d 1352 (Fed. Cir. 2007).........................................................................................15

*Pandora Jewelry, LLC v. Chamilia, LLC*,
   No. CCB-06-600, 2008 WL 3307156 (D. Md. Aug. 8, 2008)....................................10, 12, 16

*Seattle Box Co. v. Industrial Crating & Packing, Inc.*,
   731 F.2d 818 (Fed. Cir. 1984)...........................................................................................11

*Slimfold Mfg. Co. v. Kinkhead Indus.*,
   810 F.2d 1113 (Fed. Cir. 1987).....................................................................................10, 11

<u>Statutes</u>

35 U.S.C. § 112, ¶ 4..........................................................................................................15

35 U.S.C. § 154.........................................................................................................passim

35 U.S.C. § 252..........................................................................................................10, 11

<u>Other Authorities</u>

145 CONG. REC. S14719 ....................................................................................................11

Federal Rule of Civil Procedure 56 .................................................................................1, 8

H.R. REP. NO. 105-39 (1997) .................................................................................................11

Local Rule 56 .......................................................................................................................1, 2

Rule 16(b) ..................................................................................................................................1

## I.      INTRODUCTION AND SUMMARY OF ARGUMENT

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56, Defendants Rexam

Beauty and Closures, Inc., Rexam Dispensing Systems S.A.S., Valois S.A.S. and Valois of

America, Inc. (collectively, "Defendants") respectfully move this Court for the entry of an order

granting partial summary judgment in favor of Defendants on Plaintiffs MeadWestvaco

Corporation's and MeadWestvaco Calmar, Inc.'s (collectively, "Plaintiffs") claim for provisional

or "pre-issuance" damages under 35 U.S.C. § 154.

Plaintiffs filed this lawsuit accusing Defendants of infringing U.S. Patent Nos. 7,718,132

("the '132 patent")[1] and 7,722,819 ("the '819 patent")[2] (collectively "the Asserted Patents").

Defendants have sought, and obtained, leave of Court to file this motion in order to resolve a

significant issue relating to pre-issuance damages that will substantially narrow the issues for

both discovery and trial.  (*See* Rule 16(b) Scheduling Order, at ¶ 1(i), September 9, 2010 (Dkt.

No. 68).)

By this motion, Defendants seek a ruling that, as a matter of law, Plaintiffs are not

entitled to recovery of provisional or pre-issuance damages.  Pre-issuance damages are damages

based on sales of accused products prior to issuance of the Asserted Patents.  That is, damages

based on sales of accused products between the dates of *publication* of the pending patent

applications for the Asserted Patents and the dates of actual *issuance* of the Asserted Patents.

The relevant statute allows recovery of pre-issuance damages *only* in cases in which the

issued patent claims are *substantially identical* to the claims of the published application.  *See* 35

U.S.C. §154(d)(2).  In the present case, the claims of the Asserted Patents were the subject of

---

[1] Attached hereto as Exhibit A.
[2] Attached hereto as Exhibit B.

1

significant amendments during the prosecutions of the patents such that the scope of the claims was substantively changed.

Plaintiffs are precluded from pre-issuance damages in this case because the limitation "extruded and quenched" was added to *all* of the patent claims by amendment during the prosecution of the Asserted Patents.  Plaintiffs have admitted in their Answer to Defendant Rexam Beauty's Counterclaims that *all* issued claims of the '132 and '819 patents include the "extruded and quenched" limitation.  (*See* Answer to Counterclaims, ¶¶ 26-27; 41-42, September 7, 2010 (Dkt. No. 64).)  Plaintiffs also admit that the terms "extruded" and "quenched" did *not* appear in any of the published claims of the '804 and '805 publications.[3]  (*See* Ex. C at 4-5; Ex. D at 4-5; Answer to Counterclaims, ¶¶ 29-30; 44-45 (Dkt. No. 64).)  A side-by-side comparison of each published claim with its corresponding issued claim, is shown below in Statement of Undisputed Material Facts Nos. 12 and 13, with highlighting to show the differences between the published and issued claims.

Accordingly, as a matter of law, Plaintiffs are precluded from recovery of pre-issuance damages.  Defendants submit that this issue can be promptly resolved and will substantially narrow the issues for discovery and trial of the present case.

## II.    STATEMENT OF UNDISPUTED MATERIAL FACTS

In accordance with Local Rule 56(b), the Defendants provide the following list of material facts as to which there is no genuine dispute:

1.    Plaintiffs allege that Defendants have infringed the '132 patent and the '819 patent.  (Second Amended Compl. ¶¶ 23-24 (Dkt. No. 49).)

---

[3] The '132 patent issued from U.S. Patent Application Publication No. 2007/0125805 A1 ("the '805 publication"), attached hereto as Exhibit C.  The '819 patent issued from U.S. Patent Application Publication No. 2007/0125804 A1 ("the '804 publication"), attached hereto as Exhibit D.

2

2.      The application for the '819 patent was filed on October 11, 2005 as Serial No. 11/374,298.  (*See* Ex. B, at 1.)  The original application included 37 claims.[4]  (*See* Ex. E, at 012-016.)  The application was published on June 7, 2007 as U.S. Patent Application Publication No. 2007/0125804 A1 ("the '804 publication"), with all 37 claims.  (*See* Ex. D, at 1.)  The '819 Patent issued on May 25, 2010.  (*See* Ex. B, at 1.)

3.      The application for the '132 patent was filed on October 9, 2005, as Serial No. 11/539,764.  (*See* Ex. A, at 1.)  The original application included the same 37 claims as set forth in the application for the '819 patent.[5]  (*See* Ex. F, at 001-023.)  The applicants filed a Preliminary Amendment on March 14, 2007, which cancelled the original 37 claims and added new claims 38-57.  (*See id*. at 024-029.)  The application was published on June 7, 2007 as U.S. Patent Application Publication No. 2007/0125805 A1 ("the '805 publication") with published claims 38-57.  (*See* Ex. C, at 1.)  The '132 Patent issued on May 18, 2010.  (*See* Ex. A, at 1.)

4.      Plaintiffs assert that they are entitled to recover pre-issuance damages under 35 U.S.C. § 154 for the '132 patent from the time period between June 7, 2007 and May 18, 2010, and for the '819 Patent for the time period between June 7, 2007 and May 25, 2010.

5.      In an Office Action mailed November 14, 2008, in the application for the '819 patent, the PTO Examiner rejected all 37 claims as unpatentable based on the prior art.  (*See* Ex. E, at 023-046.)  In a Response to Office Action dated April 9, 2009, the applicants cancelled independent claim 1, which left claim 32 as the only independent claim in the application.  (*See id*. at 048.)  In a Final Office Action, mailed August 20, 2009, the PTO Examiner maintained the

---

[4] Relevant portions of the prosecution file history of the '819 patent are attached hereto as Exhibit E.
[5] Relevant portions of the prosecution file history of the '132 patent are attached hereto as Exhibit F.

3

rejections of the remaining pending claims.  (*See id.* at 071-081.)  In the Final Office Action, the Examiner stated that "[t]he process or compound disclosed in the Applicant's specification is not claimed, but only referenced in the specification."  (*Id.* at 080.)

6.      On October 5, 2009, the applicants filed a Request for Continued Examination in which they amended independent claim 32 to recite that the tube "consists essentially of" a fluoropolymer (*Id.* at 087.)  In the Remarks Section of the filing, the applicants stated that "[i]n this amendment, Applicant has more narrowly tailored the pending claims." (*Id.* at 091.)  On December 29, 2009, the PTO Examiner issued a Notice Of Allowance, which included an "Examiner's Amendment" and Examiner's statement of reasons for allowance.  (*See id.* at 096-101.)  In allowing the claims over the prior art, the Examiner amended all of the claims, as authorized by the applicants' attorney on December 14, 2009, to include the limitation that the tube "comprises an extruded and quenched crystalline fluoropolymer."  (*Id.* at 100-101.)  Prior to the amendment, the claims had recited that the tube consists essentially of a fluoropolymer. In his reasons for allowance, the Examiner specified that the cited prior art references fail to disclose the tube of the fragrance product, which is an "extruded and quenched crystalline fluoropolymer." (*Id.* at 101.)

7.      On March 26, 2010, the applicants for the '819 patent submitted Comments on Statement of Reasons for Allowance and expressly acknowledged that "Applicant agrees with the Examiner's ultimate conclusion that all of the present claims are allowable over the cited references and those of record, and in particular that the three noted references 'fail to disclose that the tube of the fragrance pump is an extruded and quenched crystalline fluoropolymer.'" (*Id.* at 112.)

4

8.     In an Office Action mailed November 25, 2008, in the application for the '132

patent, the PTO Examiner rejected claims 38-57.  (*See* Ex. F, at 030-044.)  In a Response to

Office Action, dated April 9, 2009, independent claims 38 and 50 were amended so that both

recited that the tube comprises a fluoropolymer "having an XRD crystallinity not greater than

about 13 wt%."  (*Id.* at 046, 048.)  In the Remarks section, the applicants argued that "no

reference of record teaches a fluoropolymer as claims with an 'XRD crystallinity not greater than

about 13 wt.%." (*Id.* at 059.)

9.     In a Final Office Action, mailed August 20, 2009, in the application for the '132

patent, the PTO Examiner maintained the rejections of the pending claims.  (*See id.* at 064-078.)

In the Final Office Action, the Examiner stated that "[t]he process or compound disclosed in the

Applicant's specification is not claimed, but only referenced in the specification."  (*Id.* at 067.)

10.     On December 30, 2009, the PTO Examiner issued a Notice Of Allowance, which

included an "Examiner's Amendment" and Examiner's statement of reasons for allowance.  (*Id.*

at 079-086.)  In allowing the claims over the prior art, the Examiner amended all of the claims,

as authorized by the applicants' attorney on December 14, 2009, to include the limitation that the

tube consists essentially of "an extruded and quenched crystalline fluoropolymer."  (*Id.* at 083-

086.)  Prior to the amendment, the claims had recited that the tube consists of a fluoropolymer.

In his reasons for allowance, the Examiner stated that the cited prior art references fail to

disclose the tube of the fragrance product, which is an "extruded and quenched crystalline

fluoropolymer."  (*Id.* at 085.)

11.     On March 26, 2010, the applicants for the '132 patent submitted Comments on

Statement of Reasons for Allowance and expressly acknowledged that "Applicant agrees with

the Examiner's ultimate conclusion that all of the present claims are allowable over the cited

references and those of record, and in particular that the three noted references 'fail to disclose that the tube of the fragrance pump is an extruded and quenched crystalline fluoropolymer.'" (*Id.* at 097.)

      12.    The '132 Patent has three independent claims: claims 1, 9 and 15, which correspond to claims 38, 50 and 57, respectively, in the '805 publication as follows (emphasis added to show differences):

| __Issued Claims of '132 Patent__ | __Published Claims of '805 Publication__ |
|---|---|
| 1.    A fragrance product comprising:<br><br>    a container containing liquid fragrance having a refractive index of about 1.37; and,<br><br>    a dispenser assembly for dispensing the liquid fragrance comprising:<br><br>    a transport assembly; **and**<br><br>    a tube connected to the transport assembly and extending into the liquid fragrance, wherein the tube **consists essentially of an extruded and quenched crystalline fluoropolymer having an XRD crystallinity not greater than about 13%, and the tube** has a refractive index of from about 1.36 to about 1.38.<br><br>(Ex. A, at col.7. l.23-35 (emphasis added).) | 38.    A fragrance product comprising:<br><br>    a container containing liquid fragrance having a refractive index of about 1.37; and,<br><br>    a dispenser assembly for dispensing the liquid fragrance comprising:<br><br>    a transport assembly;<br><br>    a tube connected to the transport assembly and extending into the liquid fragrance, wherein the tube has a refractive index of from about 1.36 to about 1.38.<br><br><br><br><br><br>(Ex. C, at 4.) |
| 9.    A fragrance product comprising:<br><br>    a container containing liquid fragrance; and,<br><br>    a dispenser assembly for dispensing the liquid fragrance comprising:<br><br>    a transport assembly; **and**<br><br>    a tube connected to the transport assembly and extending into the liquid | 50.    A fragrance product comprising:<br><br>    a container containing liquid fragrance; and,<br><br>    a dispenser assembly for dispensing the liquid fragrance comprising:<br><br>    a transport assembly;<br><br>    a tube connected to the transport assembly and extending into the liquid |

| | |
|---|---|
| fragrance, wherein the tube **consists essentially of an extruded and quenched crystalline** fluoropolymer **having an XRD crystallinity not greater than about 13%,** and both the tube and the liquid fragrance have a refractive index of from about 1.36 to about 1.38.<br><br>(Ex. A., at col.8 l.53- col.8 l.3 (emphasis added).) | fragrance, wherein the tube comprises a fluoropolymer and both the tube and the liquid fragrance have a refractive index of from about 1.36 to about 1.38.<br><br><br>(Ex. C, at 4-5.) |
| 15.    A dispenser assembly for dispensing liquid comprising:<br><br>a transport assembly; and,<br><br>a tube connected to the transport assembly;<br><br>wherein the tube **consists essentially of an extruded and quenched crystalline** fluoropolymer having an XRD crystallinity not greater than about 13%, the tube has a transparency of about 80% or more, and the tube has a refractive index of from about 1.36 to about 1.38.<br><br>(Ex. A., at col.8 l.14-22 (emphasis added).) | 57.    A dispenser assembly for dispensing a liquid comprising:<br><br>a transport assembly; and,<br><br>a tube connected to the transport assembly;<br><br>wherein the tube comprises a fluoropolymer comprising ethylene tetrafluoroethylene, the fluoropolymer has an XRD crystallinity not greater than about 13 wt %, the tube has a transparency of about 80% or more, and the tube has a refractive index of from about 1.36 to about 1.38.<br><br>(Ex. C, at 5.) |

13.    The '819 patent has one independent claim, claim 1, which corresponds to claim 32 of the '804 publication as follows (emphasis added to show differences):

| **Issued Claim of '819 Patent** | **Published Claim of '804 Publication** |
|---|---|
| 1.    A fragrance product comprising:<br><br>a container containing liquid fragrance; and<br><br>a dispenser assembly for dispensing the liquid fragrance comprising:<br><br>a transport assembly; and<br><br>a tube connected to the transport | 32.    A fragrance product comprising:<br><br>a container containing liquid fragrance; and<br><br>a dispenser assembly for dispensing the liquid fragrance comprising:<br><br>a transport assembly; and<br><br>a tube connected to the transport |

| | |
|---|---|
| assembly and extending into the liquid fragrance, wherein the tube and the liquid fragrance each have a refractive index, the difference between the refractive index of the tube and the liquid fragrance is not greater than about 0.04, the tube comprises **an extruded and quenched crystalline** fluoropolymer having a transparency of not less than about 80% **and** a crystalline content not greater than about 13%, and **the tube has** an outside diameter within a range of about 0.25 to about 10 mm.<br><br>      (Ex. B, at col.7 l.40-55 (emphasis added).) | assembly and extending into the liquid fragrance, wherein the tube and the liquid fragrance each have a refractive index, the difference between the refractive index of the tube and the liquid fragrance is not greater than about 0.04, and the tube comprises a fluoropolymer having a transparency of not less than about 80%, a crystalline content not greater than about 13%, and an outside diameter within a range of about 0.25 to about 10 mm.<br><br>(Ex. D, at 4.) |

14.     The terms "extruded" and "quenched" do not appear in any of the published claims of the '804 and '805 Publications.  (Ex. C, at 4-5; Ex. D, at 4-5; see also Answer to Counterclaims, at ¶¶ 29-30; 44-45 (Dkt. No. 64).)

15.     All of the claims of both the '132 patent and '819 patent include the terms "extruded" and "quenched."  (Ex. A, B.; see also Answer to Counterclaims, ¶¶ 26-27; 41-42 (Dkt. No. 64).)

## III.   ARGUMENT

### A.  The Legal Standard For Summary Judgment

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  A fact is material if it is one that "might affect the outcome of the suit under the governing law . . . ."  *Anderson*, 477 U.S. at 248.  Therefore, disputes over facts that are irrelevant or unnecessary will not preclude summary judgment.  *Id.* Further, a dispute regarding such a material fact is "genuine" so as to warrant the denial of summary judgment "only if evidence is such that a reasonable jury could return a verdict for the

8

nonmoving party." *Id*. at 249–50 (internal citations omitted).  "If evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. (internal citations omitted).

As the movant, Defendants bear the burden of establishing that there are no genuine issues of material fact that would prevent grant of summary judgment.  However, with regard to the question of availability of pre-issuance damages, it is the Plaintiffs' burden, as the party seeking damages, to prove that the issued patent claims are substantially identical to the claims of the published patent application.  *See Loops, LLC v. Phoenix Trading, Inc.*, No. C08-1064, 2010 WL 3041866 at \*5 (W.D. Wash. July 30, 2010).

**B.  Partial Summary Judgment Is Warranted Because The Issued Claims Of The Asserted Patents Are Not Substantially Identical To The Published Claims**

**1.  Whether Claims Are "Substantially Identical" Is A Question of Law And Therefore Appropriate for Summary Judgment**

35 U.S.C. §154 allows "provisional rights" for pre-issuance damages for infringement of a patent.  *See* 35 U.S.C. § 154(d)(1).[6]  However, in order for a patentee to have the right to recover damages during this time period, the invention as claimed in the issued patent must be "substantially identical" to the invention as claimed in the published patent application.[7] *Id*.; *see*

---

[6] In relevant part, 35 U.S.C. §154(d)(1) states:

> [A] patent shall include the right to obtain a reasonable royalty from any person who, during the period beginning on the date of publication of the application … and ending on the date the patent is issued … makes, uses, offers for sale, or sells in the United States the invention as claimed in the published patent application or imports such an invention into the United States … and … had actual notice of the published patent application.

35 U.S.C. §154(d)(1).

[7] In relevant part, 35 U.S.C. §154(d)(2) states:

*also K-Tec, Inc. v. Vita-Mix Corp.*, No. 2:06-CV-108, 2010 WL 2079682, at *7 (D. Utah May 24, 2010) ("[Patentee] must show that the claims of the patent application are substantially identical to those in the patent.").

Whether the claims are "substantially identical" is determined by whether or not the claims are without substantive change. *Loops*, 2010 WL 3041866, at *5; *Pandora Jewelry, LLC v. Chamilia, LLC*, No. CCB-06-600, 2008 WL 3307156, *9-10 (D. Md. Aug. 8, 2008). This is a question of law. *Loops,* 2010 WL 3041866, at *5 (citing *Laitram Corp.* v. *NEC Corp.,* 163 F.3d 1342, 1347 (Fed. Cir. 1998)).

The requirement in §154(d) that issued claims are without substantive change is interpreted and applied in the same way that the courts have applied the "substantially identical" requirement found in 35 U.S.C. §252, which governs reissue patents.[8] *Pandora Jewelry,* 2008 WL 3307156, at *9-10 (applying Federal Circuit case law interpreting the § 252 "substantially identical" requirement to provisional rights claim under § 154(d)). The legislative history of §154(d) explicitly states that the "substantially identical" standard in § 252 is the same as §154(d):

> The requirement for "substantial identity" in this section is based, by analogy, upon the decisional law for establishing intervening rights under the reissue statute. In section 252 of title 35, the term "identical" has, heretofore, been used without qualification, but the courts have interpreted that term to encompass claims that are "substantially identical." *Slimfold Mfg. Co. v. Kinkhead Indus.*, 810 F.2d 1113, 1115 (Fed. Cir. 1987). That standard has been adopted here for provisional rights and has now been explicitly

_____

The right under paragraph (1) to obtain a reasonable royalty shall not be available under this subsection unless the invention as claimed in the patent is substantially identical to the invention as claimed in the published patent application.

35 U.S.C. §154(d)(2).

[8] In relevant part, 35 U.S.C. § 252 states "[t]he surrender of [an] original patent shall take effect upon the issue of[a] reissued patent, and every reissued patent shall have the same effect and operation in law, the trial of actions for causes thereafter arising, as if the same had been originally granted in such amended form, but in so far as the claims of the original and reissued patents are substantially identical." 35 U.S.C. § 252.

> codified in section 252 of title 35 by conforming amendment.  No change in the law of intervening rights is intended by that conforming amendment and it is intended that the *same standard be applied in the context of provisional rights*.

*See* H.R. REP. NO. 105-39, at §204 (1997) (emphasis added).  The policy behind limiting provisional rights to "substantially identical" claims is fairness to the public and places the burden on the patent applicant to draft claims for publication that give adequate notice to the public of the scope for which patent protection is being sought.  *See* 145 CONG. REC. S14719, 1999 WL 1041313 (Nov. 17, 1999) (Section-by-Section Analysis).

The *Slimfold* decision, cited in the legislative history of §154, states that the "scope" of the claims must be "substantially identical" in order to find claims to be substantially identical.  *Slimfold Manufacturing Co., Inc. v. Kinkead Indus., Inc*., 810 F.2d 1113, 1115 (Fed. Cir. 1987).  If the amendment made to the claim is substantive, then the claims cannot be substantially identical.  *See id.* at 1116; *see also Seattle Box Co. v. Industrial Crating & Packing, Inc.*, 731 F.2d 818, 827-28 (Fed. Cir. 1984) (holding that reexamined claims are "identical" to their original counterparts if they are "without substantive change").

It is well established that amendments to overcome prior art rejections do affect the scope of the claims.  In *Laitram Corp. v. NEC Corp.,* the Federal Circuit interpreted whether claims were "substantially identical" under the standard of 35 U.S.C. § 252.  The Federal Circuit found that an amendment made to over come a rejection was substantive because it "resulted in the allowance of claims that had been rejected in the reexamination proceeding over prior art . . . ."  *Laitram Corp.,* 163 F.3d at 1348.  The Federal Circuit further commented that "[a]lthough it is difficult to conceive of many situations in which the scope of a rejected claim that became allowable when amended is not substantively changed by the amendment, we arrive at our

conclusion, not through any 'per se rule,' but in light of an overall examination of the prosecution history and the language of the respective claims." *Id.* at 1348.

The Federal Circuit has reached the same conclusion in other similar situations. For instance, in *Bloom Engineering Co., Inc.* v. *North American Mfg. Co., Inc.,* 129 F.3d 1247, 1251 (Fed. Cir. 1997), the Federal Circuit held that an amendment was substantive because it was necessary to distinguish a patentee's system from that shown in the prior art. In that case, the patentee argued that the addition to the claim merely "clarified the nature of the gas stream as described in the specification and drawings," without affecting the scope. *Id.* at 1250. The Federal Circuit rejected the patentee's argument, finding that the amendment was "necessary in order to distinguish [patentee's] injected system from that shown in the British patent" and therefore was correctly viewed as a substantive change in claim scope. *Id.* at 1251.

District courts have adopted the same reasoning. For example, in *Pandora Jewelry,* the district court found that an issued patent was not substantially identical to a published patent application because a patentee's amendment to the published patent application was "necessary to overcome the PTO's rejection," thereby denying the patentee pre-issuance damages under 35 U.S.C. §154(d). *Pandora Jewelry*, 2008 WL 3307156 at *10. In that case, the patentee amended the published claims by removing reference to a reversible band in order to overcome the PTO's rejection based on the prior art. *Id.* The district court held that "Pandora substantively altered the scope of the claim when it amended the patent to require a permanently fixed band," and "because the issued patent is not substantially identical to the published patent application," Pandora was not entitled to pre-issuance damages. *Id.*; *see also Loops*, 2010 WL 3041866, at *5-6 (holding that plaintiffs could not recover pre-issuance damages because the claims of the issued patent contained limitations that the patent application claims did not).

### 2. The Scope of the Claims of the Asserted Patents Was Substantively Changed During Prosecution To Overcome Prior Art

Plaintiffs filed their Complaint and Amended Complaint on the respective dates of issuance of the two Asserted Patents.  The '132 patent issued on May 18, 2010, which is the date on which Plaintiffs filed the Complaint.  The '819 patent issued on May 25, 2010, which is the date on which Plaintiffs filed the Amended Complaint.  The '132 patent issued from U.S. Patent Application No. 11/539,764, which was published on June 7, 2007 as the '805 publication.  The '819 patent issued from U.S. Patent Application No. 11/374,298, which was published on June 7, 2007 as the '804 publication.  Thus, the question of recovery of pre-issuance damages relates to sales of accused products from <u>June 7, 2007</u> to <u>May 18, 2010</u> for the '132 patent, and from <u>June 7, 2007</u> to <u>May 25, 2010</u> for the '819 patent.  The two Asserted Patents claim priority to the same original patent application, and contain the same specification.

The '132 patent and '819 patent relate to fragrance products, such as perfumes, which have a dispensing pump that includes a so-called "invisible" dip tube.  The dip tube is the tube that extends down into the liquid fragrance and allows transport of the liquid through the pump or spray actuator.  (*See* Ex. A, '132 patent, col.4, l.5-9.)[9]  According to the Asserted Patents, the "invisible" nature of the dip tube relates to the fact that the refractive index of the dip tube is closely matched to the refractive index of the liquid fragrance so that the tube is "invisible" within the liquid fragrance.  (*See id.* at col.5 l.51-56.)  All of the claims of the Asserted Patents require a dip tube that is "extruded and quenched," which necessarily means that the dip tube has been both "extruded" and "quenched."  (*Id.* at col.5 l.7-8 ("embodiments may be produced utilizing a quenching sequence").)

---

[9] In all aspects relevant to this motion, the specifications of the '132 and '819 patents are identical.  For the sake of brevity, only citation to the '132 specification is provided.

The specification of the '132 and '819 patents describes the importance of "quenching" as part of the extrusion process necessary for the achievement of "high transparency and/or low crystallinity tubes." (Ex. A, col.5 l.7-8.) Indeed, the applicants included a comparative example of a tube extruded through a quench tank with liquid at 80°F to 90°F as having lower crystalline content than samples of tubes that were not quenched. (*Id.* at col.5 l.13-22.) The patent specification's statements regarding the importance of quenching further confirm that the amendments to the claims to recite a "quenched" tube were substantive in nature.

The addition of the "extruded and quenched" limitation, as well as the addition of other limitations to the claims, were the result of Plaintiffs' efforts to obtain allowance of the Asserted Patents over prior art cited by the Patent and Trademark Office ("PTO") Examiner. The applications for the two Asserted Patents were prosecuted before the PTO at nearly the same time, with the PTO Examiner issuing similar office actions in each application at approximately the same time, and requiring amendments to include "extruded and quenched" in every claim of both patents at approximately the same time.

In the prosecution of the '819 patent, the PTO Examiner rejected all 37 claims as unpatentable based on prior art. (*See* Ex. E, at 023-046.) In a Final Action, the Examiner addressed the applicants' arguments attempting to distinguish a prior art reference and stated that "[t]he process or compound disclosed in the Applicant's specification is not claimed, but only referenced in the specification." (*Id.* at 080.) In other words, the Examiner indicated that the applicants' distinction over the prior art based on the "process or compound" disclosed in the patent specification was missing from, or not recited in, the pending claims.

In the prosecution of the application for the '132 patent, the Examiner rejected all of the pending claims and made the identical statement made in rejecting the claims of the application

for the '819 patent, namely that "[t]he process or compound disclosed in the Applicant's specification is not claimed, but only referenced in the specification."  (Ex. F, at 067.)  In both applications, the Examiner indicated that the applicants' alleged distinction over the prior art was not recited in the pending claims of the application, and therefore the claims were not allowable.

The amendments made during the prosecution of the Asserted Patents to overcome the prior art substantively changed the scope of the claims.  Specifically, each claim was amended to include the limitation of an "extruded and quenched" tube.[10]  The amendments were made to add this limitation in order to overcome a prior art rejection, and after the PTO Examiner commented that the applicants' alleged distinction over the prior art was not recited in the pending, rejected claims.  The limitation of quenching was described in the patent specification as significant to achieving the desired low crystallization.  In sum, the amendment was necessary for the Examiner to allow the claims and clearly changed the scope of the claims.

There is no dispute between the parties that all of the claims of the '132 patent and the '819 patent are directed to a fragrance product or dispenser assembly including, among other things, an "extruded and quenched" tube. (*See* Ex. A, B.; see also Answer to Counterclaims, ¶¶ 26-27; 41-42 (Dkt. No. 64.).)  It is also undisputed that none of the claims of the respective '804 and '805 publications included the "extruded and quenched" limitation.  (*See* Answer to Counterclaims, at ¶ 29-30; 44-45 (Dkt. No. 64); Ex. C at 4-5; Ex. D at 4-5.)  The "extruded and quenched" limitation was added by the Examiner's Amendment accompanying the Notice of Allowance issued in each application, and was expressly recited in the Examiner's reasons for

---

[10] The amendments to the independent claims apply to all of the dependent claims because each dependent claim includes the limitations of the claim from which it depends.  *See* 35 U.S.C. § 112, ¶ 4 ("A claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers."); *Monsanto Company v. Syngenta Seeds, Inc.*, 503 F.3d 1352, 1357 (Fed. Cir. 2007) (quoting 35 U.S.C. § 112).

allowance.  (*See* Answer to Counterclaims, at ¶¶ 32, 47 (Dkt. No. 64); Ex. E at 100-101; Ex. F at 083-086.)

The purpose of the amendment to add the "extruded and quenched" limitation was not to clarify the text of the claims or to make them more definite.   To the contrary, the PTO Examiner considered such amendment necessary to distinguish the claims of the '132 and '819 patents from the teachings of the cited prior art.  This is the same type of claim scope narrowing that occurred in *Laitram, Bloom,* and *Pandora Jewelry*.  As stated by the Federal Circuit in *Laitram*, "it is difficult to conceive of many situations in which the scope of a rejected claim that became allowable when amended is not substantively changed by the amendment," and this is certainly not such a situation.  *Laitram Corp.*, 163 F.3d at 1348.

As noted above, additional amendments were made to two of the independent claims of the '132 patent (*See* Stmt. of Undisputed Material Fact No. 8).  Specifically, the claims were amended to recite a specific XRD (x-ray diffraction) crystallinity of not greater than 13 wt.%. These amendments further confirm that the claims in the issued patents are not substantially identical to the claims of the published applications.  (*See* Stmt. of Undisputed Material Facts Nos. 14 and 15 for comparison).

Plaintiffs' decision to amend the claims to overcome the Examiner's rejection rather than appealing the rejection is "taken as a concession that the invention as patented does not reach as far as the original claim."  *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 723 (2002).  After being informed of the Examiner's reasons for allowance of the Asserted Patents, Plaintiffs had a choice of either accepting the Examiner's amendment to add the "extruded and quenched" limitation or filing an appeal of the Examiner's rejections.  By choosing the former and admitting in their Comments on Statement of Reasons for Allowance that the

prior art references of record "fail to disclose that the tube of the fragrance pump is an extruded and quenched crystalline fluoropolymer," Plaintiffs conceded that the addition of the "extruded and quenched" limitation substantively changed the scope of the claims.

Thus, the addition of the "extruded and quenched" limitation during the prosecution of the '132 and '819 patents to overcome the prior art amounts to a substantive change in scope of Plaintiffs' alleged invention.  Because of this substantive change in the scope, the claims in the issued '132 and '819 patents cannot be "substantially identical" to the claims in the respective published applications and Plaintiffs are, therefore, not entitled to pre-issuance damages under 35 U.S.C. § 154(d).

## IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully submit that there is no genuine issue of material fact to be tried and request that this Court enter an order granting partial summary judgment in favor of Defendants that precludes Plaintiffs' claim for pre-issuance damages under 35 U.S.C. §154.

17

Date: September 17, 2010

Respectfully Submitted,

/s/

Brendan J. McMurrer (VSB No. 68433)
Griffith L. Green (VSB No. 38936)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
(202) 736-8000
(202) 736-8711 (fax)
bmcmurre@sidley.com
ggreen@sidley.com


*Of Counsel:*

Hugh A. Abrams (*pro hac vice*)
Elizabeth Maxeiner (*pro hac vice*)
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

*Counsel for Defendants and Movants Valois
S.A.S. and Valois of America, Inc.*

/s/

Craig C. Reilly (Va. Bar No. 20942)
111 Oronoco Street
Alexandria, Virginia 22314
Telephone: (703) 549-5354
Facsimile: (703) 549-2604
craig.reilly@ccreillylaw.com


*Of Counsel:*

Gene S. Winter (*pro hac vice*)
Amanda Greenspon (*pro hac vice*)
Tatyana Voloshchuk (*pro hac vice*)
ST. ONGE STEWARD JOHNSTON
& REENS LLC
986 Bedford Street
Stamford, Connecticut 06905-5619
Telephone: (203) 324 6155
Facsimile: (203) 327-1096
Email: gwinter@ssjr.com and
litigation@ssjr.com

*Counsel for Defendants and Movants Rexam
Beauty and Closures, Inc. and Rexam
Dispensing Systems SAS*

18

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 17, 2010, I will electronically file the foregoing with

the Clerk of the Court using the CM/ECF system, which will then send a notification of such

filing (NEF) to the following:

Thomas G. Slater, Jr.
Shelley L. Spalding
Hunton & Williams LLP
Riverfront Plaza, East Tower
951 East Byrd Street Alexandria, VA 22314
Richmond, VA 23219
tslater@hunton.com
sspalding@hunton.com

Michael A. O'Shea
Hunton & Williams LLP
1900 K Street, NW
Washington, DC 20006-1109
moshea@hunton.com

Sona Rewari
Hunton & Williams LLP
1751 Pinnacle Dr, Suite 1700
McLean, VA 22102
srewari@hunton.com

*Counsel for Plaintiffs*

/s/
Brendan J. McMurrer (VSB No. 68433)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
(202) 736-8000
(202) 736-8711 (fax)
bmcmurre@sidley.com

*Counsel for Defendants and Movants Valois S.A.S.*
*and Valois of America, Inc.*