IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

JUN 1 2 2012

| | | |
|---|---|---|
| MEADWESTVACO CORPORATION, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CASE NO. 1:10-cv-511 |
| REXAM PLC, *et al.*, | ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION

THIS MATTER is before the Court on Plaintiffs MeadWestvaco Corporation and

MeadWestvaco Calmar, Inc.'s (collectively, "MWV") Motion for Entry of Plaintiff's Proposed

Permanent Injunction. Dkt. No. 591. There are four issues before the Court. The first issue is

whether the prevailing party at trial, Rexam Dispensing Systems SAS ("Rexam France") and

Valois SAS ("Valois France"), must be subject to an injunction order. The Court holds that

Rexam France and Valois France need not be included in any injunction order because they were

held not liable for patent infringement and there is no evidence indicating that they are likely to

infringe the patents-in-suit.

The second issue is whether the Court should adopt MWV's proposed design-around

disclosure provision that restricts Defendants Rexam Beauty and Closures Inc. ("Rexam

America") and Valois of America, Inc.'s ("Valois America") design-around efforts where there

is no evidence that Defendants will violate the Court's injunction orders. The Court holds that

this extensive provision is not warranted because it is premature to contemplate such measure as

there is no evidence suggesting that this is an exceptional case warranting broad injunctive relief.

1

The third issue is whether the Court should adopt MWV's proposed provision, which requires Rexam America and Valois America terminate any existing indemnification agreements with any third party regarding claims of infringement of MWV's patents and prohibits Defendants from entering into any new indemnification agreements. The Court holds that MWV's proposed provision concerning Defendants' indemnification agreements with their clients is not warranted because (1) Valois America no longer sells the infringing products; (2) there is no legal authority supporting the termination of existing indemnification agreements between a defendant and third parties in a patent infringement case; and (3) the proposed restriction on Rexam America's ability to enter into any new indemnification agreements is not warranted as there is no factual basis that demonstrates there is any threat of present or future induced infringement.

Additionally, the Court finds that a sunset provision is not necessary as to Valois America because it no longer makes, uses, sells, or offers to sell pumps with the Ultimate® tube. While a sunset provision is appropriate with respect to Rexam America, there is insufficient evidence for the Court to determine a suitable sunset royalty rate using the framework set forth in *Amado v. Microsoft Corp.*, 517 F.3d 1353 (Fed. Cir. 2008). To avoid additional discovery of parties' financial records and to expedite the final resolution of the matter, the Court directs MWV and Rexam America to participate in mediation presided by the assigned magistrate judge to reach an agreement on the appropriate amount of the sunset royalty rate.

This case arises from MWV's allegations that Defendants Rexam America, Rexam France, Valois America, and Valois France infringed its two patents, U.S. Patent Nos. 7,718,132 and 7,722,819. The focus of the litigation is fragrance pumps containing a special dip tube. The dip tube becomes invisible when immersed in the fragrance liquid. The accused devices are

Rexam America and Rexam France's (collectively "Rexam") fragrance pumps containing the V1

and V2 tubes and Valois America and Valois France's (collectively "Valois") fragrance pumps

containing the Old and New Ultimate® tubes.  After a thirteen-day nonjury trial, the Court issued

its Memorandum Opinion on April 12, 2012 ("Opinion").  Dkt. No. 581.  The Court concluded,

*inter alia*, that:

> (1) Rexam America directly infringed the '132 patent by selling fragrance pumps containing the V2 tube in the United States, but Rexam France was not liable for direct infringement of the patent;
>
> (2) Valois America directly infringed the '132 patent by selling fragrance pumps containing the Old and New Ultimate® tubes in the United States, but Valois France was not liable for direct infringement of the patent;
>
> (3) the infringement is not willful;
>
> (4) neither Rexam nor Valois is liable for contributory infringement of the '132 patent and the '819 patent; and
>
> (5) neither Rexam nor Valois is liable for inducing infringement of the '132 patent and the '819 patent.[1]

The Court further concluded that a permanent injunction against Rexam America and Valois

America is warranted under 35 U.S.C. § 283.

Thereafter, on April 26, 2012, MWV submitted its proposed injunction order.  On May

10, 2012, Rexam and Valois each responded to MWV's proposed injunction order and submitted

its own proposed order.  Then, on May 10, 2012, MWV filed a reply to Defendants' responses

and amended its proposed order.  The Court now addresses the scope of the injunction.

"[A] trial court is given broad discretionary powers in shaping equitable decrees."

*Gemveto Jewelry Co., Inc. v. Jeff Cooper Inc.*, 800 F.2d 256, 259 (Fed. Cir. 1986) (citations

omitted).  However, "injunctive relief should be narrowly tailored to fit the specific legal

---

[1] Although the Court concluded that Defendants were not liable for either direct infringement or indirect infringement of the '819 patent, all parties' proposed injunction orders contain references to the '819 patent. Therefore, the Court will not strike these references from the final injunction orders.

violations." *Id.* "Every order granting an injunction . . . must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail . . . the act or acts restrained or required." FED. R. CIV. P. 65(d)(1). In the patent infringement context, "a permanent injunction that simply prohibits future infringement of a patent" is not specific enough to comply with the requirements of Rule 65(d). *Int'l Rectifier Corp. v. IXYS Corp.,* 383 F.3d 1312, 1316 (Fed.Cir.2004). "[T]he only acts the injunction may prohibit are infringement of the patent by the adjudicated devices and infringement by devices not more than colorably different from the adjudicated devices." *Id.*

As a preliminary matter, the Court concludes that Rexam and Valois should be subject to separate injunction orders which reflect the different courses taken by Rexam and Valois in light of the Court's Opinion. Specifically, Valois America, "which only operates within the United States, no longer makes, uses, sells or offers to sell pumps with the 'invisible' tube" known as the Ultimate® tube. Valois' Resp. to Pl.'s Proposed Inj. Order at 6. Valois America has no intention of resuming such sales in light of the Opinion. Additionally, Valois France proposes to take certain measures to avoid infringement of the patents-in-suit. Rexam, on the other hand, does not provide any specific plans concerning its infringing products. Therefore, two separate injunction orders are appropriate in this case.

With respect to the scope of these injunction orders, the Court first holds that Rexam France and Valois France need not be subject to any injunction order because they were held not liable for patent infringement, and there is no evidence indicating that they are likely to infringe the patents-in-suit. The purpose of a permanent injunction is to prevent future infringement rather than compensate a patentee for past infringement or punish an infringer for past infringement. *Johns Hopkins Univ. v. CellPro, Inc.,* 152 F.3d 1342, 1365–67 (Fed. Cir.1998).

An injunction order under 35 U.S.C § 283 is to "enjoin activities that either have infringed the [patent-in-suit] or are likely to do so." *Id.* at 1366.

In this case, the Court has concluded that neither Rexam France nor Valois France was liable for infringement of the patents-in-suit. Moreover, there is no evidence to suggest that Rexam France and Valois France are likely to infringe the patents-in-suit. Rather, there is an evidentiary basis for a conclusion to the contrary. Valois France has already begun including a warning label on pumps containing the Ultimate® tube sold outside the United States. This label informs the customers of the prohibition on the sale of pumps containing the Ultimate® dip tube in the United States. The use of the label indicates that Valois France intends to avoid infringement of MWV's patents.

Unlike Valois France, Rexam France has not disclosed a specific plan concerning the future sales of its infringing pumps. Nonetheless, the past record militates against the conclusion that Rexam France is likely to infringe MWV's patents. The Court notes that after the patents-in-suit were issued, Vincent Raby, Rexam's Vice President of Global Product Development, instructed Rexam's employees to advise their foreign customers to only distribute their fragrance products containing infringing pumps outside the United States. Opinion at 61. The Court has found that Mr. Raby's action indicated that Rexam France wanted its clients to avoid infringement of MWV's patents. As such, the record does not support the proposition that Rexam France and Valois France are likely to infringe the patents-in-suit. Accordingly, Rexam France and Valois France need not be subject to any injunction order.[2]

---

[2] Valois France agrees to take actions to avoid infringement of MWV's patents. In addition to the warning labels mentioned above, it agrees to obtain written certifications from its foreign customers that their fragrance products incorporating infringing pumps will not be sold in or imported into the United States. The Court adopts provisions proposed by Valois France.

The Court also holds that MWV's proposed provision concerning Defendants' design-around efforts is not warranted at this juncture because it is premature to contemplate such measure as there is no evidence suggesting this is an exceptional case that warrants broad injunctive relief. "One of the benefits of a patent system is the so-called 'negative incentive' to 'design around' a competitor's products." *State Indus. Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985). "[L]egitimate design-around efforts should always be encouraged as a path to spur further innovation." *TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869, 883 (Fed. Cir. 2011) (citation omitted). Thus, a competitor's ordinary design-around efforts are not prohibited by law. Rather, they generally promote innovation, a goal consistent with the policies of our patent system.

The MWV proposed provision requires that before introducing its new design-around product in the United States, Defendants must provide the product to MWV's counsel for inspection and testing and an explanation of the basis for non-infringement. If MWV does not agree that the product can clearly and convincingly be shown not to infringe the patents-in-suit, Defendants may seek relief from the Court. Citing *Additive Controls & Measurement Systems, Inc. v. Flowdata, Inc.* and *Spindelfabrik Suessen–Schurr v. Schubert & Salzer Maschinenfabrik Aktiengesellschaft,* MWV argues that a district court has broad discretion to fashion broad injunction relief. 154 F.3d 1345 (Fed. Cir. 1998); 903 F.2d 1568 (Fed. Cir. 1990). However, MWV's argument is misplaced. "[B]road injunction should be used only in exceptional cases." *Flowdata* , 154 F.3d at 1356. Broad injunction may be appropriate when a district court reasonably concludes that such measures are necessary to compel compliance with the existing court orders. *See Id.* In both *Flowdata* and *Spindelfabrik*, the defendants had repeatedly violated an existing injunction order. 154 F.3d at 1356; 903 F.2d at 1577. To ensure compliance with the

injunction order, the district court in both cases imposed additional and more extensive injunctive relief. *Id.*

Here, nothing in the record demonstrates that this is an exceptional case which warrants extensive injunctive relief. In fact, the injunction orders are yet to be entered, and no evidence indicates that the Defendants will violate any proposed provisions. Hence, it is premature to even contemplate including a sweeping provision in the injunction order that could affect Defendants' ability to legitimately design around MWV's patents.

Next, the Court holds that MWV's proposed provision concerning Defendants' indemnification agreements is not warranted because (1) there is no legal authority supporting the termination of existing indemnification agreements between a defendant and third parties in a patent infringement case; and (2) the proposed restriction on Defendants' ability to enter into any new indemnification agreements is not warranted as there is no factual basis that demonstrates there is any threat of present or future induced infringement.

The MWV proposed provision requires that Defendants terminate any existing indemnification agreements with any third party regarding claims of infringement arising from the use, sale, offer for sale, or importation of the infringing products in the United States. It also prohibits Defendants from entering into such indemnification agreements. Because Valois America no longer makes, uses, sells, or offers to sell pumps with its Ultimate® tube, this proposed provision with respect to Valois America is unnecessary. The Court declines to adopt MWV's proposed provision concerning existing indemnification agreements with respect to Rexam America. because it is not aware of any legal precedent, and MWV cites none, which authorizes a court requiring a party to breach its contractual indemnification obligation.

Furthermore, there is no evidentiary basis supporting MWV's proposed prohibition of Defendants' ability to enter into any new indemnification agreements with their clients. To bolster its proposal, MWV cites *U.S. Philips Corp. v. Iwasaki Elec. Co., Ltd.*, 607 F. Supp. 2d 470 (S.D.N.Y. 2009). In that case, a jury found that the defendant, who did not engage in affirmative acts in the United States, actively induced infringement of the plaintiff's patent in this country. *Id.* at 479–80. Then, the district court enjoined the defendant from indemnifying customers for future sales of the infringing product in the United States. *Id.* at 484.

However, the circumstances in this case do not warrant a similar injunction provision. The Court concluded that Rexam and Valois were not liable for inducing infringement for selling pumps containing the V2 and the new Ultimate® tubes because MWV failed to show, by a preponderance of the evidence, that Defendants had the requisite knowledge that their clients' fragrance products, containing these pumps, infringed their patents. Opinion at 59. After the Court issued its Opinion, the Defendants were considered to have the requisite knowledge that their clients' fragrance products infringed MWV's patents.

However, in order to establish a claim for inducing infringement, "the patentee must show, first that there has been direct infringement, and second, that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *MEMC Electronic Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 (Fed. Cir. 2005) (internal quotation marks and citation omitted). The second showing, defendant's knowing inducement of the direct infringement, requires the establishment of two elements; namely, some affirmative act by defendant that induced the direct infringement, and that defendant acted with the requisite state of mind. *See Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553–54 (Fed. Cir. 1990). "The intent requirement for inducement

8

requires more than just intent to cause the acts that produce direct infringement. Beyond that threshold knowledge, the inducer must have an affirmative intent to cause the direct infringement." *DSU Med. Corp. v. JMS Co.,* 471 F.3d 1293, 1306 (Fed. Cir. 2006).

To justify its proposed provision concerning new indemnification, MWV needs to show that Rexam America is, or will, actively induce infringement of MWV patents. Yet, there is no evidence before the Court concerning Rexam America's business dealings with its clients after April 12, 2012. Specifically, there is no evidence showing that it has entered into new indemnification agreements with its clients since April 12, 2012. Nor is there evidence indicating Rexam America's intent to enter into such agreements in the future. As such, the Court cannot assess the threat of existing or future induced infringement by Rexam America. Absent such assessment, the Court declines to exercise its discretion to restrict Rexam America's ability to enter into indemnification agreements with any third party.

Lastly, the Court addresses MWV's proposed sunset provision which states that the injunction order will not take effect until six months after April 12, 2012. This provision is not necessary for Valois America as it has already stopped making, using, and selling pumps with the Ultimate® dip tube. Rexam America does not object to the six-month sunset period, but it argues that MWV's proposed mandatory royalty, $30 per thousand infringing products sold, is unwarranted and excessively high. Instead, citing its expert report by Christopher Spadea prepared in April 2019, Rexam America contends that the proper rate is $8 per thousand infringing products sold.

The Court cannot determine the appropriate sunset royalty rate because of the lack of information concerning current pricing of the infringing products and Rexam America's incremental profit derived from its use of MWV's patents. Ongoing royalties awarded by a

court in lieu of an injunction are not "damages" under 35 U.S.C. § 282, but an equitable remedy allowed by § 283. *See Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1314–15 (Fed. Cir. 2007). When an injunction includes a sunset provision, courts may set a royalty rate for that period. *See ActiveVideo Networks Inc. v. Verizon Comms., Inc.*, 827 F. Supp. 2d 641, 654 (E.D. Va. 2011). While the Federal Circuit has not provided exact guidance on calculating a royalty rate during a sunset period, at least one court in this District has determined a sunset royalty rate by employing the post-verdict royalty framework set forth in *Amado. Id.* at 655–58. In *ActiveVideo*, the court analyzed *Amado* factors and concluded that there was an increase in the plaintiff's bargaining power, after the jury's verdict in its favor. *Id.* at 656–58. The court was then able to determine a sunset royalty rate based on the incremental profit derived from the infringer's use of the plaintiff's patents. *Id.* at 658.

The evidence shows that invisible tubes could cost as much as $60 per thousand units. Opinion at 34. However, MWV's expert also found evidence of price erosion of these tubes overtime. Opinion at 75. But it is not clear to the Court what the current price is for Rexam America's infringing products. The Court also notes that the expert reports cited by the parties do not contain information about Rexam America's the current incremental profit derived from the use of the patents-in-suit. Thus, the Court lacks the necessary information to set an appropriate sunset royalty rate in this case. However, to avoid additional discovery of parties' sales records and to expedite the final resolution of the matter, the Court directs MWV and Rexam America to participate in mediation presided by the assigned magistrate judge to reach an agreement on the appropriate amount of the sunset royalty rate without prejudice to either party's right to appeal the determination.

In conclusion, for the reasons stated above, the Court will enter separate injunction orders for Rexam America and Valois America. These orders will not contain provisions concerning these Defendants' design-around efforts and their present and future indemnification agreements with third parties. The injunction order against Rexam America will contain a six-month sunset provision and the sunset royalty rate is to be determined pending the result from the Court ordered mediation.

The Clerk is directed to forward a copy of this Memorandum Opinion to counsel of record.

ENTERED this /2/ day of June, 2012.

Alexandria, Virginia
6/ /2/2012

_____/s/_____
Gerald Bruce Lee
United States District Judge